Take your time to set up. Let me call the next case. It's Bradley Rodriguez v. Social Security Administration. Good morning. May it please the court, Daniel Lader on behalf of Appellant Bradley Rodriguez. This court has the opportunity and the duty to correct a constitutional calamity in the Social Security Administration. The SSA is an executive body, but it exists and operates without the fundamental safeguards of Article 2 of the Constitution. Let's talk about the Administrative Law Judge first. The District Court essentially ruled that the Acting Commissioner's ratification and reappointment of all of the ALJs took care of the matter. Given the statutory language in 42 U.S.C. 904, which existed before the ratification slash reappointment, why doesn't that take care of the issue? Your Honor, it's actually quite straightforward. That section does not authorize appointment of ALJs. ALJ positions agency-wide, not just in the SSA, executive branch-wide, were created as part of the Administrative Procedure Act in 1946. And 5 U.S.C. section 3105 is specifically the section that governs appointment of Administrative Law Judges. Why doesn't section 904A1, which was effective in 2015 in its current version, cover this? The Commissioner shall appoint such additional officers and employees as the Commissioner considers necessary to carry out the functions of the Administration under this chapter. Why doesn't that cover ALJs? Because the language very clearly says, shall appoint such additional officers and employees, and then later explicitly says, except as otherwise provided in that sentence or in any other provision of law, and goes on to explain how their appointments will be governed. Now, section 3105 is an explicit entire section that deals with just appointment of ALJs. And the APA comprehensively created the system of ALJs that we have executive branch-wide. Section, and these are all under Title V, section 5372 is titled Administrative Law Judges. And it governs their pay grade. Section 7521 governs what adverse actions may be taken against ALJs. So the ALJ function, position, and appointment, and all their attendance of those offices are created under the APA. Is there currently a provision in your view that allows the Commissioner to appoint ALJs? No, Your Honor, that's not. So if you win, if you win, Mr. Rodriguez sits and waits and waits and waits. Not necessarily. Who's going to adjudicate his claim? Well, there are different options that could. First of all, immediately I would say that the Commissioner of Social Security has the statutory authority to adjudicate the claim. Which means he'll wait and wait. I mean, the backlog, and I don't mean this as a back-end run to your constitutional argument, but there's no way that the Commissioner of Social Security can run through the backlog of pending cases. There's just, I mean, Mr. Rodriguez would probably be dead by the time the Commissioner gets to his case. That's absolutely true. Despite the fact that he's a relatively young man. Absolutely true. It's one thing to argue on the remedy side, not the constitutional side, but the remedy side, that what has to be done now is that the Commissioner has to appoint ALJs correctly under the Appointments Clause and all that. But if your argument is that 42 U.S.C. 904 does not give the Commissioner the authority to appoint ALJs, then the Social Security system in terms of benefits is basically over for now. It's on pause. Because there are different remedies. The President can nominate, and then the nominated ALJs can go through Senate confirmation, and that's exactly what the Appointments Clause requires by default. Unless Congress vests by law appointment authority in the head of departments. How many Social Security ALJs are there nationwide right now, approximately? They're approximate. They use about 80 to 90 percent of all the federal ALJs, and right now I believe it's a little over 1,500. And that underscores why this is such a serious problem that needs to be corrected. The other option to the PAS method, Presidential Appointment with Senate Confirmation, is just that Congress amends the statute and conforms it to the Appointments Clause, assuming that's what they want to do. They can say ALJs are appointed by the heads of department, or if they want to split it up, they can get... So if I have your position right, going back to the point Judge Jordan made, if you say there's no power under 904A1 and there's no power under 3105, all payments, whether they're Social Security payments or disability payments, must stop until either A, Congress amends the law, or B, until the commissioner himself adjudicates each claim. Not exactly. The ALJ hearing process is not the first step in getting benefits. It's only after an initial examination and then a reconsideration are both denied, and you have an aggrieved party who says, I am entitled to benefits, I was wrongfully denied, and I'm going to invoke my right to a hearing with an ALJ. Tell me again why 904A1 doesn't work. It speaks of the commissioner, as Judge Jordan read it to you, appointing such additional officers as may be necessary to carry out the functions of the administration under this chapter, the chapter referred to as Chapter 7 of Title 42, which covers disability payments that Rodriguez sought. Yes, and it overlaps with the hearings required under Title 5, which is what the ALJ positions were all originally created, and they still serve under, they're still appointed under 3105, and the language speaking to additional officers and employees, that's for positions that aren't already addressed by Congress, and I would argue that If the word additional wasn't there, would it fit? I believe the last sentence also is problematic independently of that. But that last sentence only goes to how compensation is going to be set for these people, right? No, before that, it says such officers and employees shall be appointed and their compensations fixed with Title 5. So when you have a specific statutory provision explicitly identifying the ALJs at issue and how they're supposed to be appointed, which is by each agency, each agency shall appoint, then that not only would trump this even if it didn't have the additional language, but this section is specifically taken out because it's limited to positions not already established under other provisions of law. Help me with the other provisions that you're challenging. You don't have much time left, so let's see if we can cover them briefly. You say members of the Appeals Council are not principal officers because they're supervised. Let's get to that issue. Yes, Judge. We argue they are exercising principal officer powers because whether it's by statute or regulation, regulations have the effect of law, or at least presumably do until a court strikes them down. Appeals Council decisions are not reviewable. Whether in certain instances that's because a commissioner has voluntarily abrogated the authority he or she may have is immaterial because they weren't reviewable. They're presumptively unreviewable. Isn't it enough that the Social Security's Appeals Council is overseen by a principal officer who exercises, as a general matter, significant oversight, and the principal officer is an officer who created the Appeals Council? No, it's not because by regulation, the commissioner does not even have authority to overturn those decisions. Why is that issue even properly before us, given that the Appeals Council here declined discretionary review and didn't affect Mr. Rodriguez's case in any way? Well, for example, the United States v. Arthrex, the Arthrex case recently decided by the Supreme Court, had a similar constitutional infirmity, and in that case, the remedy was just to remand with the director having the authority to exercise discretionary review. And it's a violation here because not only, presumptively, could the commissioner not overturn the Appeals Council decision, but a claimant, specifically here, the appellant, had no recourse and no means to request that. So your remedy for that violation is that the commissioner is now going to not only take up the role of the ALJs, but then is going to review himself in place of the Appeals Council. He's going to serve as judge and appeals board too, right? I'm not suggesting that is what would happen. What's the remedy then? The remedy is... Elimination of the Appeals Council? No, to... There's nobody to appoint them. There's nobody to appoint them. There's the president with Senate confirmation. What's that? There's the president with Senate confirmation. Right, but we can't impose that remedy. Your remedy is that we strike down the appointment of the judges served, the ALJs serving on the Appeals Council. That's all we can do. And then it's up to the president of the United States to decide whether he's going to take any steps. But if you're suggesting that it's the commissioner on the first problem that is going to become the ALJ for all pending disability and benefits issues across the United States, the commissioner can't be his own Appeals Council, right? That's correct. Your Honor, that's our constitutional design. It is not the job of the judicial branch to say how this... I understand. So the bottom line is you would put out of business for the time being the ALJs and the council. Let's get to the final question that I have. Tell me, holding those issues aside, why the ALJ's decision in this case based on these facts was not supported by substantial evidence. Your Honor, a large, apparently large reason for denying benefits is that the ALJ discounted the testimony of Mr. Rodriguez about how severe the side effects of his medication were and how difficult it is to get through a day, even in the very structured environment of Miami shelter that he lived in. And I agree it's within the purview of the finer fact to assign credibility. But when you assign so much credibility to one side where he's saying that he actually received some relief and health benefits from the medication, if you're going to reject credibility that there's a trade-off and that the medications actually have a substantial impact on his ability to get through the day, then at the very least that requires a thorough explanation. And I submit that the record evidence does not allow judicial review to ascertain what the reasoning was. So at the very least, if not reversal with remand instructions to give benefits, then remand instructions to consider the record as a whole and adequately explain all the reasoning. Thank you. I'll turn it over to my colleague. All right. Thank you very much. Mr. Aguilar. Good morning. Daniel Aguilar for the Social Security Administration. To just begin with the appointment of the ALJs, the two statutes that we've cited, Section 904, which is specific to the SSA, and Section 3105, which generally allows for the appointment of ALJs across the federal government by each agency, certainly allow the Commissioner of Social Security ample authority to appoint the ALJs as inferior officers, consistent with the Supreme Court's instructions in Lucia and other cases. And that's why it's perhaps not surprising that the courts of appeals have consistently held that both for ALJs within the Social Security Administration and ALJs in other agencies. Ratification provides the proper constitutional appointment that is done under Section 3105. And I think what my colleague's argument essentially here is, is that because 3105 uses the word agency, you shouldn't read that to allow for a constitutional appointment. And because 3105 doesn't allow for a constitutional appointment, you shouldn't allow 904 to have a constitutional appointment because the unconstitutional provision should govern. I don't think that there's any case that provides that kind of statutory construction should proceed that way. Indeed, that was almost precisely the argument that petitioners were making in the Supreme Court's seminal case on inferior officers, Edmund v. United States. There, what the court said is that petitioners are asking us to interpret the statute in a manner that would render it clearly unconstitutional, which we must, of course, avoid doing if there is another reasonable interpretation available. And that's at page 658 of Edmund. Let me ask you a question. As I understand it, the acting commissioner did, in fact, specifically ratify all 1656 ALJs on July the 15th, 2018. And he did that by name. That's correct, Your Honor. Is that in the record of the case? I know that it was attached to the brief. It's publicly available in SSA's FOIA Reading Room. We provided an internet citation for that. There wasn't a record developed outside of the administrative record here because plaintiffs moved for judgment on the pleadings, arguing that on the pleadings themselves, there has not been a proper appointment of these ALJs. And our response to that is that, one, the ratification, summarization, both in the emergency message and in the Federal Register Notice, I think those are cited on page 35 of the opening brief, those were publicly available. There's a presumption of regularity with government action that when we say that we're appointing somebody under the Constitution, we really are doing it. And then just to allay any doubt, we directed the court to the publicly available document that lists all of the ALJs by name. I haven't gone back to the complaint in this case, but if you're moving for judgment on the pleadings, the pleadings are basically the complaint and the answer. What did the complaint lay out with regards to the appointment of ALJs, the ratification of ALJs, or the like, to go back to Judge Marcus's question about where in the record this is found? Sure, so plaintiffs moved for judgment on the pleadings, and that's why the court granted judgment in favor of us. I'm sorry, Your Honor, I can't specifically recall the complaint's arguments on this. The motion for judgment on the pleadings said that the ratification was ineffective because it didn't proceed in a form whereby it listed all of the ALJs by particular name and that in any event, the statutory authority here was insufficient because neither 3105 nor Section 904 provide for the appointment of any inferior officers within the SSA. So he didn't dispute that there was a ratification. He just said the whole process was improper. Indy, I think, again, looking at page 35 of the opening brief here, plaintiff's argument is that the statutory scheme does not allow the commissioner to appoint any officers, and so the district court rightly rejected that saying there's plenty of authority here for the appointment of inferior officers. Indeed, that's what the agency did. I think there's a majority of it. You cite a lot of cases for the proposition that ratification suffices under 3105. There's only one that I saw in the Social Security context, and that's the Sixth Circuit case, right? I believe that's correct, Your Honor. Others are generally Department of Labor or other department cases. I think it's as the Fourth Circuit recognized in Probst, and forgive me if I'm wrong on this, but they did say that the commissioner of Social Security has constitutionally appointed the ALJs, understanding that that was done through this ratification because that's the action that the commissioner took. And I think the Supreme Court noted that as well, saying that this is something where SSA can appoint the ALJs. So you think there are two Social Security cases in that long string that you provided? Sure. So it's on Ramsey that forecloses future appointments clause challenge. That's a Sixth Circuit case. And the Probst case, which is right before that, the commissioner's ratification validated the ALJ's constitutional status. And then in Serco, the Third Circuit case right before that, it also explains that they're going to have their claims adjudicated by an appointed ALJ. But obviously, the doctrine of ratification is saying, you're right, the human resources people within the agency initially took care of appointing you. I didn't take personal political responsibility for that. I'm taking their actions as my own now. The purpose of the appointments clause is to provide for political accountability. And here, there's no question that the acting commissioner in 2018 said, these are appointments of my own. I'm accepting responsibility for them for both good and bad appointments so that people know where the chain of command lies. Now, the commissioner did not. I read the 30-something pages listing all the names. Did not explain or set out under which statute the ratification or appointments were being made, right? That's correct. I don't think there's a specific citation to the statutory authority. That's because the agency just operates that with it in the background. With what in the background? That the commissioner has authority to appoint ALJs and inferior officers generally. It would be nice if they articulated the theory in the ratification document. It's certainly something that could be done. There's nothing within the Constitution or the doctrine of ratification that's saying you need to identify a specific statutory authority for it. I think if somebody's challenged it, say, I don't think you have the statutory authority, then certainly the government should come forward, as we've done here, saying here's the statutory authority that Congress granted to us. And that's why we can't appoint inferior officers. And I think as your colloquy earlier demonstrated, SSA gets 600,000 of these disability and SSI adjudications every year. And there's no way that the commissioner could personally adjudicate all of them, even though the statute in both Section 405 and Section 902 vests the commissioner with authority to do all of that. Obviously, Congress contemplated that there were going to need to be subordinates within the agency that could assist the commissioner in performing these duties. And when those subordinates are inferior officers, Congress in Section 904 and 3105 provided the commissioner with authority to appoint these ALJs. Can we talk about the Appeals Council? Certainly. So what I take their claim to be is that they need Senate confirmation because they're principal officers, because they issue final decisions. That authority to review ALJ decisions comes solely from delegation from the commissioner. It's not a scheme where Congress has foisted this on the agency and said the commissioner is affirmatively prohibited from reviewing any decisions of the subordinates. That was the Supreme Court's problem in Arthrex. It said these subordinates make final decisions that the principal officer there cannot review at all. Here, by contrast, the statute clearly grants the commissioner authority to take all of these powers, conduct all the adjudications and fact findings. The commissioner obviously said that's impractical to do, and so it's delegated that down to subordinates to engage in these adjudications. That power solely comes from that delegation. The commissioner can abolish it if she so wishes. And the fact that what the test is, as Edmund explained, is if you're an inferior officer, if your work is directed and supervised at some level by a principal officer. And here are the Appeals Council members. All of their authority is by delegation, by regulation. They have to follow all of the policies and procedures that the commissioner sets forth. And if they're performing some kind of function that the commissioner doesn't think is appropriate, their office can be abolished by regulation. And that is the sort of supervision and control that necessarily makes somebody an inferior officer. And the Fifth and Sixth Circuits have confirmed this in a parallel situation within the Department of Labor. There, the Secretary of Labor created a similar review board and delegated them final decision-making authority. And there, the Fifth Circuit in Willey and the Sixth Circuit in Bardenor said, indeed, you're an inferior officer because your office can be abolished by regulation. All of your authority comes by delegation, and you have to follow all of these policies and procedures. You're necessarily subordinate and necessarily inferior. And that makes good sense. And I'm happy to answer any other questions that the Court has. What about the last issue, the application in this case? Sure. So we think that, as we've explained in our brief, that substantial evidence certainly supports the decision here. The ALJ here was not inconsiderate to Mr. Rodriguez's testimony or to any of the medical evidence here. The ALJ said, I do find that you suffer from impairments that are severe. I do find that you're suffering from short-term memory loss and neurological difficulties. And indeed, after discussing with the vocational expert, I don't think you can perform your past work as a line cook or a carpenter's assistant. And so then the question was, do you have residual functional capacity to perform any job that exists in significant numbers in the national economy? And the vocational expert said, given the various limitations here, I think you could probably work as a hospital cleaner or a dining room attendant. And in the reply brief, I don't take Mr. Rodriguez to be taking issue with any of those findings. The issue that they really press is that Mr. Rodriguez testified in the hearing that he can become drowsy, and the ALJ didn't specifically address that fact. What this court has held is that in Dyer v. Barnhart, the ALJ doesn't have to address every fact explicitly so long as the ALJ is not making the wholesale rejection that doesn't allow this court to be able to review the evidence here. If you look through the medical history that's in the administrative record and even the hearing itself, the primary cause of the disability limitations for Mr. Rodriguez was his traumatic brain injury, which made it hard for him to concentrate and focus and have short-term memory. And that's borne out by everything else. On this claim that the medications make him drowsy, what I would point to is in the administrative record, pages 14 to 423, where the Jackson Health doctors were interviewing and doing clinical assessments of Mr. Rodriguez, and there they continuously stated that Mr. Rodriguez was alert and not somnolent, which I understand to be the medical term for drowsy in those circumstances. And we cite a number of other pages, administrative record 431, 443, 707, where the doctors consistently said Mr. Rodriguez was alert and oriented. And so I think it was fair, given that substantial evidence throughout the record, that this wasn't something where the main claim for disability was the drowsiness, it was the short-term memory loss and other considerations which the ALJ agreed were severe. But given the structure for disability, as it's defined by statutes and regulations, Mr. Rodriguez's residual functional capacity did not entitle him to disability benefits, given the record. Tell me, before you finish up, the way you see the, if we need to get to it, the severability argument playing out with regard to the commissioner. Is that only, in your view, a remedies issue? Should it come up or is it part of one of the claims raised by Mr. Rodriguez? So I think it is a merits and a remedy issue, Your Honor. You could take, just to give you two lines, you could sever the commissioner's removal restriction and then explain that that's the appropriate remedy here and that no other relief is entitled. Alternatively, you could take what the Fourth Circuit just did in K&R Contractors and say we don't have to address the removal provision because on the back end about retrospective remedy and applying the Supreme Court's decision in Collins, you can't show that the particular decision in your case was that there was harm inflicted in it from the contested removal provision, and therefore there's no back-end remedy. But I think probably the better course would be to what the Ninth Circuit did in Kauffman v. Kijikazi, where it said we agree with the United States, the commissioner's removal restrictions are unconstitutional applying Salia law in Collins, that we can invalidate and sever those restrictions so that the commissioner is removable at will by the president, and then, again, applying the retrospective analysis of Collins, you're not entitled to additional relief for vacatur in your case because you can't show prejudice, you can't show that the complained of decision was affected by the contested removal decision. How do you see it as a merits question? On the merits, their claim is that there is a constitutional violation because there exists a statutory restriction on the president's ability to remove the commissioner. And so I think how the Ninth Circuit understood that in Kauffman was that that is a merits question. Is this constitutional? How does that play out? How is it related to the attack on the constitutionality of the appointments of the ALJs or the ALJs who are members of the Appeals Council, which are the two principal constitutional claims being advanced? Sure. I understand the appointments issues to be completely distinct. And I don't understand, my friend, and I don't understand there being any precedent to say that an unconstitutional removal restriction limits the ability to appoint inferior officers. That's completely different. What the Supreme Court explained in Collins is that an appointment is, do you have the authority to hold your office? And if the commissioner has the authority to hold the office appointed by the president with Senate confirmation, then the commissioner can appoint others. So the appointments issue is completely separate. The only question then is, is there separately an unconstitutional removal provision? Should it be severed? And then at the very last question, are you entitled to vacatur of the agency decision? And as we've explained, we think the provision for the commissioner, but not for the inferior officers, is unconstitutional. For the inferior officers, those are longstanding cause requirements that have been consistently upheld for inferior officers, particularly when the department head is removable at will. So you're entitled to severance of the commissioner's removable restrictions, but you haven't demonstrated any prejudice under Collins and under the Court of Appeals decisions applying that. All right. Thank you very much. Thank you, Your Honors. So the Constitution matters, and Section 904 does not, cannot independently authorize appointment of ALJs. Doing so would be tantamount to giving the executive branch carte blanche to create offices and fill them with people of their choice. And that's not within the purview of Article 2 at all, even the president. Congress creates departments, agencies, and the offices, and then executive actors fill those roles. Can I ask you a question? With regards to Section 904, Section 904 uses the language additional, I'll get rid of additional, officers and employees, right? Then Section 3105 uses, very specifically, administrative law judges. Are administrative law judges not officers and employees? ALJs are officers. They're inferior officers. Since Lucia held in 2018 that SEC ALJs are inferior officers, all other agencies and the president in an executive order filed suit and said, there's little to no doubt that every federal ALJ, no matter what agency, is an inferior officer. But as my colleague pointed out, prior to Lucia, the SSA had human resources personnel, non-officers, just employees, doing the appointing of ALJs until this constitutional crisis erupted in 2018. And it was clear that ALJs are constitutional officers that are subject to the Appointments Clause and that that clause trumps federal statutory law and federal statutes need to abide with the Constitution. And whether or not this is the case, it might explain why we found ourselves in that situation because when ALJs were first created in 1946, they weren't doing what they do now. They weren't nearly as often being the final arbiters within the executive branch before you get judicial review. And that's a real problem that matters and needs to be actually corrected in our system of law. And that is Congress's job to do. It might be unfortunate or a little overwhelming thinking about, in the SSA specifically, that is one of the largest administrative adjudicatory bodies, how drastically everything might come to a halt. Not everything, but everything that wants to be challenged when a claimant gets denied benefits. But that only underscores why it needs to happen. And the fallout is going to be Congress's to deal with. And that is hopefully something that gives them the incentive to move quickly. And if they deem it proper and make the relatively simple adjustment. And on the other hand, the structure of the SSA also violates Article 2 independently under Article 2, Section 3, which vests the executive power in the president and requires that the president shall ensure the faithful execution of the laws. And while the government concedes that the removal of restriction on the commissioner is unconstitutional and they'd rather litigate against a remedy, for someone pointing that out, like the appellant, that's not where the violation ends because administrative law judges and those who sit on the Appeals Council are not removable at will by the commissioner nor the president. And they're making the decisions that become final for judicial review. So it's the commissioner, the Appeals Council members, and the ALJs who are all protected for cause. And despite that the Appeals Council may have elements that are creatures of regulation, first of all, agencies are bound by their own regulations to the extent that they bind private citizens, they bind agencies as well. And enacting as well as removing regulations is rulemaking under the APA that cannot be done overnight. So the current status quo is that the system is designed how it is in violation of Article 2. So there can't be any merit protections for ALJs? It's not that there can't be any merit protections for ALJs, but... Which ones can exist constitutionally in your view? When you say ALJs, are you also referring to those who sit on the Appeals Council? Aren't the ones who sit on the Appeals Council ALJs? In their roles, ALJs are often referred to as administrative appeals judges. Call them whatever you want. When they sit on the Appeals Council, they exercise power differently. So they may be ALJs. I'm talking about... OK, let's talk about then trial-level ALJs. Under your constitutional view, can there be merit protection for them? Absolutely, as long as those decisions are subject to, at the very least, discretionary review at a level above them, who either directly or through perhaps a commissioner can be removed at will. If the commissioner can be removed at will by the president, it has to get back to the president somehow. If the ALJ makes a decision that neither the president nor sometimes they refer to as an alter ego, a principal officer removable at will, if the decision in the executive branch can't be overruled by someone of that nature, then that is a violation of Article 2. That prevents accountability to the executive. In this context, the commissioner's clearly... It's clearly an unconstitutional removal provision because in other contexts where it's been held OK, it's where it's a multi-member director board and they have staggered terms and all these different safeguards that prevent violating Article 2's requirement for the president to ensure faithful... ...trial-level ALJs, in your view, need to be removable at will. Or their decisions need to be reviewable by someone who is removable at will. Either option, I believe, would solve the constitutional issue. OK. All right, thank you both very much. Thank you, judges.